KAREN A. OVERSTREET
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Rm. 6301
Seattle, WA 98101-1271
(206) 370-5330

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| In re ) | |
| ) | Chapter 13 |
| AIDA B REYES, ) | |
| ) | Bankruptcy No. 09-17532 |
| ) | |
| Debtor. ) | **MEMORANDUM DECISION ON** |
| ) | **DEUTCHE BANK'S OBJECTION** |
| ) | **TO CONFIRMATION** |
| _____ ) | (NOT FOR PUBLICATION) |

This matter came before the Court on October 21, 2009, on Deutche Bank's Objection to Confirmation of Chapter 13 Plan, filed on October 14, 2009, on behalf of Deutsche Bank National Trust Company ("Creditor"). The Court heard oral argument on October 21, 2009, and invited the parties to file additional submissions on the question of whether the debtor, Aida Reyes ("Debtor"), was entitled to modify Creditor's secured claim under Bankruptcy Code § 1322(b)(2).[1] The hearing was continued to December 2, 2009.

On November 9, 2009, Debtor filed a Memorandum of Points and Authorities and a declaration in support. Creditor filed a Supplemental Memorandum in Support of the Objection to

---

[1] Unless otherwise indicated, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. As amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

MEMORANDUM DECISION - 1

Confirmation by Deutsche Bank, "as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-WMC2 Through Its Servicing Agent America's Servicing Company" on November 25, 2009, as well as a declaration in support. Finally, on November 30, 2009, Debtor filed Debtor's Reply to Deutche Bank's Supplemental Memorandum. The hearing scheduled for December 2, 2009 was stricken by the Court and the matter was taken under advisement.

I. **Facts**.

The following facts are undisputed.[2] On or about March 3, 2006, Debtor executed and delivered a note in favor of WMC Mortgage Corp in the original principal amount of $456,300.00 (the "Note"). The Note was secured by a Deed of Trust (the "Deed of Trust") encumbering real property commonly described as 7502 30th Ave. N.E., Seattle, WA 98115 (the "Property"). Debtor filed this chapter 13 proceeding on July 29, 2009. Debtor is a single woman who lives in a five bedroom home located at the Property.

In 1993, Debtor began taking in boarders to live with her at the Property and she has continued to rent rooms to boarders since then. Most of Debtor's boarders are foreign exchange students who are referred to her by organizations such as the American Cultural Exchange and USA International and Abode. Other boarders come to Debtor through other referral services. Debtor receives initial rent payments directly from the referring organizations and executes a written rental agreement with each

---

[2] See Docket no. 31. Aida Reyes' Declaration (Main Document), Letter from A.C.E. Language Institute (Exhibit 1), and Uniform Underwriting and Transmittal Summary (Exhibit 2).

MEMORANDUM DECISION - 2

boarder. The students make subsequent rent payments directly to Debtor on a monthly basis.

The boarders who live at the Property share a common kitchen and receive food and meals from Debtor as part of their rental agreement. Each boarder is entitled to a furnished room and generally three hot dinners per week. Debtor shops for the tenants' food and makes it available in the common kitchen. She also maintains the common areas in a clean and usable fashion and otherwise helps the boarders become acclimated to the neighborhood and Seattle.

Debtor currently receives approximately $2,100.00 per month in rental payments, depending on the number of boarders and their relative rental agreements. The total amount of rent she receives has not substantially increased since 2006, when the Note and Deed of Trust were executed.

Prior to early 2009, Debtor earned $41,500.00 annual gross income, or $3,450 monthly gross income, from her full-time work at the University of Washington as a laboratory technician. She worked at the University of Washington for nearly 25 years before she was forced to retire due to a disability in early 2009.

The loan application prepared in connection with the Note and Deed of Trust reported total "base income" of $5,564 per month. Although the amount did not break out separately wages and rental income, it is undisputed that the reported amount includes both Debtor's then current income from the University of Washington and her monthly rental income from boarders. Debtor testified in her declaration that when she applied for the loan,

MEMORANDUM DECISION - 3

she informed the person who represented the lender of her dual sources of income. She was asked to provide proof of income from both sources, including a W-2 form for proof of her wages from the University of Washington and a copy of her bank statements showing steady deposits for proof of her rental income. Debtor provided the necessary documentation, including the documents required to prove her rental income. She also offered a letter from a placement agency in support of her loan application.

The Note evidences a loan in the amount of $456,300 with an adjustable rate of interest ranging from 7 to 14%. Debtor's wages from the University of Washington, without more, would barely have covered the loan payments at the lowest rate.

**II. Law.**

A. <u>The loan is not protected by the Anti-Modification Provision of 11 U.S.C. §1322(b)(2)</u>.

Debtor has argued that her Property does not fall within the scope of the Section 1322(b)(2) anti-modification provision because her Property is not merely her personal residence, but contains an income-producing rooming house business that was present at the time the loan was made. The Bankruptcy Code allows modification of secured loans; however, a Bankruptcy Court's power to modify loans does not extend to loans secured "only by a security interest in real property that is the debtor's personal residence." § 1322(b)(2). The issue, therefore, is whether Creditor's lien is secured only by the Debtor's "personal residence."

Bankruptcy Courts have been inconsistent in their

MEMORANDUM DECISION - 4

interpretation of what is a "residence" when the debtor rents out some portion of the home to third parties. The Ninth Circuit has not ruled on the issue. The Debtor relies on *In re Scarborough*, 461 F.3d 406 (3rd Cir. 2006), in which the court held that "based on the plain language of 1322(b), a creditor does not receive anti-modification protection for a claim secured by real property that includes both the debtor's principal residence and other rental property that is not the debtor's principal residence." *Id.* at 411. Conversely, another court held "that the residence in which the debtor primarily resides is also a source of income to the debtor does not render it 'something other than a primary residence.'" *In re Guilbert*, 176 B.R. 302, 305 (D.R.I. 1995).

Other courts have allowed modification of a loan secured by an interest in property in which debtor resides when the property involves multi-unit dwellings. *See In re Maddaloni*, 225 B.R. 277 (D. Conn 1998); *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996); *In re Bulson*, 327 B.R. 830 (Bankr. W.D. Mich. 2005). Yet, another line of cases adopts a case-by-case approach and employs a flexible, multi-factor test to determine whether the parties intended the loan to be residential or commercial in nature at the time it was made. Loans that are residential in nature may be modified, whereas loans that are commercial in nature may not. *See Litton Loan Servicing, LP v. Beaman*, 298 B.R. 508, 511-12 (N.D.N.Y. 2003); *In re Brunson*, 201 B.R. 351, 353 (Bankr. W.D.N.Y. 1996).

In a number of the cases referenced above, courts have expressed the concern that "on the eve of the commencement of his

MEMORANDUM DECISION - 5

Chapter 13 proceeding a debtor could sidestep the mortgage exception by adding a second living unit to the property." *In re Bulson*, 327 B.R. 830, 846 (Bankr. W.D.Mich. 2005); *see also In re Guilbert*, 176 B.R. 302, 305 (D.R.I. 1995). In this case, Debtor has been operating a boarding house for approximately 16 years, so the concern of these courts is not present.

Courts have held that for the purposes of Section 1322(b)(2), the character of the property should be determined as of the time the creditor takes a security interest in the collateral because it is at that point that the lender must consider whether the loan may be subject to modification at some future time. *In re Scarborough*, 461 F.3d at 412; *see also Bulson*, 327 B.R. at 846. Thus, a crucial fact is whether the Creditor in this case knew of Debtor's boarding business at the time the loan was made.

The facts of this case fall somewhere between *Scarborough*, which involved two separate living units, one rented and one used solely by the debtor, and *Guilbert*, in which the debtor rented a portion of her residence to family members. In this case, Debtor had a well-established boarding business before she borrowed money from Creditor. Of the five bedrooms in the Property, Debtor occupies only one. She provides cleaning and meal service for four boarders and the income she derives from those services is significant. The Deed of Trust states at paragraph 6 that Debtor "shall occupy, establish, and use the Property as borrower's principal residence...." Debtor does use the Property

MEMORANDUM DECISION - 6

as her principal residence, but she also uses the Property to operate a boarding house.[3] Although the Property does not contain separate living units like the property in *Scarborough*, Debtor is conducting an actual boarding business, unlike the debtor in the *Guilbert* case.

Debtor's testimony that she advised the loan officer of her rental income at the time she applied for the loan and was asked to provide proof of such income is uncontested. Debtor provided the lender with bank statements to show consistent rental income from her boarding business. Thus, the Creditor knew of Debtor's rental income and boarding business when the Creditor took a security interest in the Property and should have known that the loan could be subject to modification in a Chapter 13 proceeding. It is clear that without the additional income, Debtor would not have been able to make the payments under the Note and would not have qualified for the loan.

*Scarborough* and its followers rely on a plain language reading of the statute. These courts hold that by using the word "is" in the phrase "real property that is the debtor's principal residence," Congress equated the terms "real property" and "principal residence." *In re Scarborough* 461 F.3d 406, 413. Therefore, the courts have reasoned that the use of "is" "means

---

[3] Creditor contends that Debtor's boarding business violates local ordinances and the Deed of Trust, which requires that she operate the Property in accordance with all laws. The Court makes no finding as to whether Debtor's business violates some local ordinance and a determination of that issue is not necessary to the Court's ruling.

MEMORANDUM DECISION - 7

that the real property that secures the mortgage must be *only* the debtor's principal residence in order for the anti-modification provision to apply." *Id.* The Court agrees with the reasoning in *Scarborough*. Any other construction of Section 1322(b)(2) would read the word "only" out of the statute. Accordingly, the Court finds that Creditor's lien is not protected by the anti-modification provision of Section 1322(b)(2).

    B. Standing.

Debtor challenges Creditor's standing in this case. She cites Judge Brandt's opinion in *In re Peter A. Jacobson et al.*, 402 B.R. 359 (Bankr. W.D. Wash. 2009), in which Judge Brandt addressed a claim by a servicer as follows: "[t]he real party in interest in relief from stay is whoever is entitled to enforce the obligation sought to be enforced. Even if a servicer or agent has authority to bring the motion on behalf of the holder, it is the holder, rather than the servicer, which must be the moving party, and so identified in the papers and in the electronic docketing done by the moving party's counsel." (*Jacobson* at page 10 of 18).

In the Affidavit of Teressa Williams (Docket No. 33), filed by Creditor in support of its objection to confirmation, Ms. Williams declares under oath that America's Servicing Company is servicing the loan for Deutsche. She further declares that the Note is endorsed in blank and that America's Servicing Company is "in possession of the original endorsed promissory Note." Williams Decl., ¶ 3. The Deed of Trust has been assigned

MEMORANDUM DECISION - 8

to Deutsche, but Debtor points out that the assignment was signed by a representative of Mortgage Electronic Registration Systems, Inc. and not by any officer or representative of the previous Deed of Trust holder, WMC.  Williams Decl., Ex. C.  The moving party here is Deutsche, although the Note is in the possession of America's Servicing Company, the servicer.  There is no evidence that America's Servicing Company is holding the note for the benefit of Creditor, nor is it clear whether the assignment of the Deed of Trust is valid.  In the absence of evidence that America's Servicing Company has authority to hold the Note for the account of Creditor and of a valid chain of assignments from the original holder of the Deed of Trust to Creditor, the Court is unable to find that Creditor has standing.

**CONCLUSION**

　　For the foregoing reasons, the Court will deny the objection to confirmation filed by Creditor upon Debtor's presentation of an order consistent with this decision.

　　　　　　　　///END OF MEMORANDUM DECISION///

*Karen A. Overstreet*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

MEMORANDUM DECISION - 9